## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOHN G. KAIN FARMS, LLC d/b/a JAY KAY FARMS, | ) ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| VS. | ) | Civil Action No.  SA-21-CV-374-XR |
| | ) | |
| KEMIN INDUSTRIES, INC., | ) | |
| | ) | |
| *Defendant*. | ) | |

### ORDER

On this date, the Court considered Defendant Kemin Industries, Inc.'s Motion to Dismiss (ECF No. 8). As stated at the status conference, the Court will consider the motion in light of Plaintiff's Third Amended Complaint. Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

### Background

Plaintiff JK Farms ("JKF") filed this original action under the Court's diversity jurisdiction. According to Plaintiff's Complaint, "This is an action for damages and declaratory relief to remedy breach of contract, fraud, and negligent misrepresentation." ECF No. 9 ¶ 1. Plaintiff JKF as lessor and Kemin as lessee entered into a lease agreement for farmland in Frio County, Texas. JKF brings claims for breach of contract, fraud, fraud in the inducement, and negligent misrepresentation. Kemin moves to dismiss all claims. In response, Plaintiff contends that all claims are sufficiently pled to survive dismissal at this stage.

JKF incorporates the Complaint's factual allegations into each of its claims. These factual allegations, which must be taken as true at this stage, assert the following: JKF operates

-1-

approximately 2,400 acres of South Texas agricultural land in Frio County that is extremely valuable for agricultural purposes due to its three water wells and approximately 1,097 acres of land under irrigation. In 2017, Kemin approached JKF about a long-term lease agreement whereby it would lease the land to grow crops for its business. Kemin attempted to negotiate a long-term lease with JKF over several months, but JKF rejected their overtures.

During negotiations, Kemin insisted that Well Number 3 be switched from a diesel engine pump to an electric pump and requested that additional pivots be added, at JKF's expense. Kemin also "insisted upon tying up the leasehold for ten (10) years" and "wanted the option to amend the Lease to allow for an increase in additional irrigated acreage at the same price per acre ($225.00/acre) for the same time period. "JKF was not interested in Kemin's proposal and was adamant that he would not accept it." The well conversion would cost approximately $100,000 and the new pivots approximately $90,000.00. If Kemin terminated early, JKF would not be able to recoup its up-front costs for these changes, which would "eat up any profit in the first two years of the agreement." Further, it would tie up the leasehold for ten years regardless of an increase in market price for similar irrigated acreage over that same time period. JKF was also concerned about having difficulty finding a new tenant on similar terms. Due to these concerns, JKF was extremely reluctant to accept the deal and continued to tell Kemin it was not interested.

In September 2017, due to JKF's continued reluctance and Kemin's strong desire to lease the land, Kemin sent Amy Gandhi, an attorney/employee for Kemin, and Rod Reed, a local representative, to Texas to meet with JKF's manager, John Kain, to alleviate JKF's concerns. They met at a hotel conference room in Jourdanton/Pleasanton, Texas. JKF reiterated that it would not enter into any agreement with Kemin's required demands without some type of assurance from Kemin. Kemin, by and through Ms. Gandhi, proposed a lease agreement provision that allowed

for the payment of two years rent upon early termination if JKF agreed to Kemin's conditions. "JKF was assured by Ms. Gandhi that this provision would adequately compensate JKF if Kemin was to terminate the lease early, as such future damages would be incapable or difficult to estimate due to market fluctuations in the price of irrigated farm land in Frio County." Ms. Gandhi also "reassured Plaintiff that the two year liquidated damages would be a reasonable forecast of just compensation in light of JKF's outlay of cash for Kemin's requested improvements and the difficulty in finding another comparable long-term lease at the same rate and acreage, based upon the uncertainty of the existing agricultural lease market at the time of any future breach." However, Plaintiff alleges that "Kemin had no intention of abiding by their proposed provisions at the time such representations were made."

Kemin also proposed that they would aid JKF in the search for a new commercial tenant if Kemin terminated early, reiterating that it would not be a problem since Kemin knew numerous companies who operated at their level and would be interested in taking over the lease. Further, the 24-month liquidated damages provision would give time to find an adequate replacement, if needed. Kemin proposed these provisions to address JKF's concerns, alleviate any uncertainty for JKF and, more importantly, to close the deal. Plaintiff alleges Gandhi made such representations with knowledge of their falsity or without knowledge of their truth, and had no intention of abiding by their proposed contractual provisions. Thereafter, Ms. Gandhi drafted the provisions found in paragraph 4 of the Lease, and Ms. Gandhi represented that the early termination clause would adequately protect and compensate JKF in the event of Kemin's early termination.

JKF, unaware that Kemin had no intention of abiding by the provisions they proposed and drafted, agreed. The final agreement was executed on or about October 16, 2017. *Id.* ¶ 15. The lease term was for 10 years, beginning September 2017 and ending in 2027, with rent of $225/acre

(annual lease payment of $210,375.00). *Id.* Ex. A ¶ 3.1. The Lease Agreement states that Lessee

covenants with the Lessor:

> to assume full responsibility for the operation and routine maintenance of the Leased Premises and for the routine repair or replacement of all fixtures or chattels located therein or thereon provided such repair or replacement is not a major repair or replacement exceeding twenty thousand ($20,000) dollars. If such a repair or replacement exceeds twenty thousand ($20,000) dollars, Lessor and Lessee shall equally share the cost with Lessee's liability not exceeding twenty thousand ($20,000) dollars except as follows. Notwithstanding the foregoing, Lessee shall pay for all repairs and replacements, whether routine or major, resulting directly from its use of the Leased Premises.

Ex. A ¶ 1.2.6.

The Lease Agreement also provides that Lessee (Kemin) would have the right to terminate

the Lease for any of certain listed events, including "[i]n the event Lessee no longer engages in

growing oregano and growing a replacement crop is not economically feasible." *Id.* ¶ 4.2.

Paragraph 4.3 provides that,

> In the event Lessee terminates the lease for any of the [reasons listed in ¶ 4.2], Lessee shall be responsible for the rent payment due to Lessor for a period of the following twenty-four (24) months and shall work with Lessor to find a new lessee.
> …

JKF paid for the well conversion ($100,000.00) and added the pivots ($90,000.00). Kemin

leased the property for the next two years without incident, and in fact on May 18, 2018 exercised

the right to farm additional contiguous lands owned by JKF at the previously agreed price of

$225/acre. The parties executed a First Amendment to Farm Lease dated May 15, 2018, and annual

payments increased to account for the additional acreage. *Id.* Ex. B. As amended, annual rent was

$246,825.00. *Id.* JKF alleges it performed all obligations under the lease.

On or about July 28, 2020, John Greaves of Kemin notified JKF in writing that it would be

terminating the lease agreement early "due to intense competition from low cost producers" such

that it was "no longer economically feasible" to continue the oregano program. *Id.* ¶ 17. The email attached a termination letter terminating the lease effective July 27, 2020 and invoking § 4.2.8 of the lease, which provides that Kemin has the right at any time to terminate this Lease in the event that Kemin no longer engages in growing oregano and growing a replacement crop is not economically feasible.

JKF alleges that Kemin did not satisfy its obligations under the early termination clause and also breached the requirement to return the equipment and premises in "good working order" because Well Number 1 was not in "good working order" and Kemin did not repair it or tender expenses for repair. Paragraph 5 of the Lease Agreement states that Well Number 1 "was at last inspection in good working order." Ex. A ¶ 5. Paragraph 5 further provides,

> Lessee will then use, repair, and maintain said wells at his sole cost. Lessee's obligation to pay for repairs and replacement shall not include major repairs or replacement exceeding twenty thousand ($20,000) dollars. If such a repair or replacement exceeds twenty thousand ($20,000) dollars, Lessor and Lessee shall equally share the cost with Lessee's liability not exceeding twenty thousand ($20,000) dollars except as follows. Notwithstanding the foregoing, Lessee shall pay for all repairs and replacements, whether routine or major, resulting directly from its use of the Leased Premises. . . . Lessee agrees to return these wells in good working order per Solansky Pump and Welding or a successor company and make any repairs or replacements deemed necessary by said company at the end of the lease. . . .

JKF notified Kemin that Well Number 1 was not in good working order, and Kemin offered to pay JKF $20,000 toward repair if JKF would sign a full and final release, releasing Kemin from any and all other contractual claims under the lease agreement, including the early termination liquidated damages provision. JKF rejected this proposal. JKF further alleges that Kemin breached the lease requirement to help JKF search for a new lessee, and has not provided any names of potential lessees. Pursuant to the lease, JKF notified Kemin of the breach and gave them thirty days to cure. Demand for payment was made on or about January 29, 2021, but no

offer of payment was made and no names of other lessees provided.

Plaintiff JKF filed this lawsuit, originally asserting claims for breach of contract, fraud, and negligent misrepresentation. Instead of an answer, Kemin moved to dismiss all claims. Plaintiff's Third Amended Complaint contains four counts: (1) breach of contract; (2) fraud; (3) fraud in the inducement; and (4) negligent misrepresentation. JKF seeks damages and specific performance. The Court will consider the motion to dismiss in light of the Third Amended Complaint.

## Applicable Standards

If a complaint fails to state a claim upon which relief can be granted, a court is entitled to dismiss the complaint as a matter of law. FED. R. CIV. P. 12(b)(6). In considering a motion to dismiss under 12(b)(6), all factual allegations from the complaint should be taken as true. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Additionally, the facts are construed favorably to the plaintiff. *Id.* Courts may look only to the pleadings in determining whether a plaintiff has adequately stated a claim; consideration of information outside the pleadings converts the motion to one for summary judgment. FED. R. CIV. P. 12(d). To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 1964 (2007). Factual allegations must be sufficient to "raise a right to relief above the speculative level." *Id*. A well-pleaded complaint can survive a motion to dismiss even if actual proof of the facts alleged is "improbable." *Id*. at 556.

## Analysis

Kemin moves to dismiss each of Plaintiff JK's claims. JKF has responded in opposition.

A. <u>Negligent Misrepresentation</u>

In addition to incorporating all the prior factual allegations, JKF alleges that "Kemin, by and through their agents, employees, and/or representatives, made false representations regarding the obligations Kemin would perform upon early termination of the Lease Agreement(s) dated October 16, 2017 and May 18, 2018," that "Kemin intended that JKF rely upon these representations to induce JKF to enter into the Lease Agreement dated October 16, 2017 and May 18, 2018," and JKF "justifiably relied upon these representations to their detriment" and would not have entered into these Agreements, but for these representations. JKF alleges that "Kemin, at a minimum, failed to exercise reasonable care when it made these false representations to JKF" and "never communicated any limitations on their represented obligations under the Lease Agreement, which they drafted."

Kemin moves to dismiss the negligent misrepresentation claim on the basis that Plaintiff alleges only misstatements as to future actions, not existing fact. Kemin also moves to dismiss the claim because Plaintiff does not plead any injury independent of its damages for breach of contract. In response, Plaintiff asserts that Amy Gandhi (1) represented that the liquidated damages provision they proposed and ultimately drafted would adequately protect Plaintiff and provide the requested financial security and assurance needed to agree to the deal, but now claims that the very provision they drafted to entice Plaintiff is unenforceable and (2) represented that Kemin would aid in the search for another commercial tenant should Kemin terminate early. Plaintiff contends that the misrepresentations were knowingly false.

Under Texas law, negligent misrepresentation has four elements: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business;

(3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 123 (5th Cir. 2019). "A negligent misrepresentation claim, however, cannot be based on a promise to act in the future, but must rather focus on misstatements of existing facts." *Liquid Capital of Am. Corp. v. Effective Bus. Sols. Inc.*, No. 3:18-CV-3102-S-BH, 2020 WL 2950412, at *7 (N.D. Tex. Mar. 30, 2020); *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007) ("We have further clarified that a negligent misrepresentation claim must allege misstatement of an 'existing fact.'").

Allegations that Kemin misrepresented "the obligations Kemin would perform upon early termination of the Lease," such as pay liquidated damages and help find a new lessee, are not actionable as negligent misrepresentation claims because they are promises to act in the future rather than misrepresentations of existing fact.

Moreover, Plaintiff fails to address Kemin's argument that the claim is barred by the independent injury rule, also known as the economic loss rule. The economic loss rule is a defense that bars negligence claims for recovery of economic loss when the loss is limited to the subject matter of a contract. Contractual relationships may create duties under both contract and tort law. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). The acts of a party may breach duties in tort or contract alone or simultaneously in both. *Id.* The Texas Supreme Court has held that when a plaintiff seeks damages for breach of a duty created solely under a contract, as opposed to a duty imposed by law, tort damages are unavailable. *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493 (Tex. 1991) (when duty arose solely from contractual promise to publish advertisement, the action was only one for breach of contract); *see also Jim Walter Homes*, 711 S.W.2d at 618 (when injury is solely that parties to construction contract did not get the house they were promised and

paid for, that can only be characterized as a breach of contract). In such cases, losses are more appropriately addressed through common-law breach of contract claims than through tort claims. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418 (Tex. 2011).

The economic loss rule primarily applies to "actions for unintentional torts." *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 235 (Tex. 2014). The draft Third Restatement now concludes generally that "there is no liability in tort for economic loss caused by negligence in the performance *or negotiation of a contract* between the parties." *Id*. at 243 (quoting *Restatement (Third) of Torts: Liability for Economic Harm*) (emphasis added). The Court further held that the economic loss rule should apply equally to an action for negligent performance of services and an action for negligent misrepresentation in the same situation. *LAN/STV*, 435 S.W.3d at 246. When and how to apply the economic loss rule to negligent misrepresentation claims "does not lend itself to easy answers or broad pronouncements" but instead "depends on an analysis of its rationales in a particular situation." *Id.* at 245-46.

In *D.S.A., Inc. v. Hillsboro Independent School District*, 973 S.W.2d 662, 663 (Tex. 1998), the Court explained that, regardless of any independent duty, negligent misrepresentation claims are viable only if a party sustains an injury independent from those stemming from a contractual breach. *See also Sharyland*, 354 S.W.3d at 417 n.12 (noting that negligent misrepresentation claims are "viable only if a party sustains an injury independent from those stemming from a contractual breach"); *Smith v. JPMorgan Chase Bank, N.A*., 519 F. App'x 861 (5th Cir. 2013) (a plaintiff may not bring a claim for negligent misrepresentation unless he can show that he suffered an injury that is distinct, separate, and independent from the economic losses recoverable under a breach of contract claim); *New Century Financial, Inc. v. Olympic Credit Fund, Inc*., 487 F. App'x 912 (5th Cir. 2012) (negligent misrepresentation claim barred when plaintiff did not allege an

injury distinct from that suffered under the contract and sought the same measure of damages).

One relevant question for the independent injury rule is whether the plaintiff is alleging damages/injury flowing from reliance on a negligent misrepresentation independent of its claimed damages/ injury from the breach of the contract. In this regard, all the case law is clear that a party may not seek and recover benefit-of-the-bargain or expectancy damages for negligent misrepresentation, *D.S.A.*, 973 S.W.2d at 663. Here, Plaintiff seeks damages for breach of contract in the form of liquidated damages designed to compensate for Defendant's breach. Liquidated damages are a form of expectancy or benefit-of-the bargain damages, and thus these are not damages based on an independent injury. Plaintiff's negligent misrepresentation claim is barred insofar as it seeks to recover liquidated damages.

Although Plaintiff's First Amended Complaint sought only expectancy damages (and specific performance), Plaintiff's Second and Third Amended Complaints added a prayer for out-of-pocket (*i.e.*, reliance) damages for the expenditures for well conversion and adding pivots. Thus, Plaintiff alleges it suffered damages in reliance on Kemin's alleged misrepresentations. Further, although Plaintiff only alleges in Count Four that Kemin misrepresented "the obligations it would perform," Plaintiff's response to the motion to dismiss argues that Gandhi made misrepresentations of existing fact by stating that the liquidated damage provision it proposed and drafted would adequately protect Plaintiff. This allegation still relates to statements about future events. And Kemin argues it is also a non-actionable expression of opinion. But to the extent this alleged misrepresentation could be characterized as a statement of existing fact, the Court nevertheless finds it barred by the economic loss rule.

In *LAN/STV*, considering the rationale behind the economic loss/independent injury rule, the Texas Supreme Court stated that contracts in which the parties can contract to allocate risks of

economic loss are the types to which the independent injury or economic loss rule should apply. Here, the parties allocated the risks of Kemin's early termination by negotiating a liquidated damages provision. Though JKF alleges that Kemin negligently misrepresented the validity of the liquidated damages provision that it drafted, the Court has not found any cases allowing an independent tort recovery against a negotiating opponent for allegedly negligently misrepresenting that a liquidated damages provision was valid. Thus, JKF's claim is more appropriately addressed through Plaintiff's breach-of-contract and fraudulent inducement claims.  Plaintiff's negligent misrepresentation claim is dismissed.

   B.   Fraud/Fraudulent Inducement

   JKF alleges that Kemin, by and through their agents, employees and/or representatives, made material representations regarding the obligations Kemin would perform under the Lease Agreements. JKF alleges the material misrepresentations were false and were either known to be false when they were made or were made by Kemin without knowledge of their truth. JKF further alleges that Kemin intended that JKF rely on the representations and used them to induce JKF to execute the Lease Agreements, and JKF would not have entered them but for the representations. JKF alleges that it relied upon Kemin's representations to its detriment when it entered into the Lease Agreement. In the fraud in the inducement count, JKF alleges Kemin made material misrepresentations in their contract negotiations to induce JKF into entering the lease and had no intention of abiding by the very contract provisions they had proposed to induce Plaintiff into entering the Farm Lease Agreement.

   Kemin moves to dismiss the fraud claim on the basis that Plaintiff fails to plead the "who, what, when, and where" of its claim, and because Plaintiff did not originally plead that Kemin intended not to perform at the time the representations were made. In response, JKF asserts that

its pleading sufficiently identifies the "who, what, when, where, and how" in the Amended Complaint. Specifically, it alleges that in September 2017, Kemin sent Amy Gandhi, an attorney/employee for Kemin, and Rod Reed, a local representative, down to Atascosa County to meet with JKF's manager, John Kain, to impress upon JKF their continued desire the lease the property and alleviate any concerns JKF had. The meeting was held a local hotel conference room. Gandhi proposed the early termination lease provision and "JKF was assured by Ms. Gandhi that this provision would adequately compensate JKF if Kemin was to terminate the lease early, as such future damages would be incapable or difficult to estimate due to market fluctuations in the price of irrigated farm land in Frio County, Texas." And "Ms. Gandhi also reassured Plaintiff that the two year liquidated damages would also be a reasonable forecast of just compensation in light of JKF's outlay of cash for Kemin's requested improvements and the difficulty in finding another comparable long-term commercial Lessee at the same rate and for the same acreage, based upon the uncertainty of the existing agricultural lease market at the time of any future breach by Kemin." Plaintiff alleges Kemin "had no intention of abiding by the very contract provisions they had proposed to induce Plaintiff."

"Under Texas law, there are two types of common-law fraud: (1) simple fraud, also known as fraudulent misrepresentation, and (2) fraudulent inducement, which is when someone allegedly induces another to enter into a contract by using false representations." *Bates Energy Oil & Gas v. Complete Oilfield Services*, 361 F. Supp. 3d 633, 660 (W.D. Tex. 2019). Although fraudulent misrepresentation and fraudulent inducement are separate causes of action, both have the same elements. *Id*. These elements are "(1) defendant made a material misrepresentation that (2) was false, (3) and was either known to be false when made or was asserted without knowledge of its truth, (4) the defendant intended the representation to be acted upon, (5) it was relied upon, and

(6) it caused injury." *Id.* (citing *Jacked UP, LLC v. Sara Lee Corp.*, 854 F.3d 797, 810 (5th Cir. 2017)). To show fraud based on a promise of future performance, a plaintiff must also show that the person making the promise had no intention of performing at the time he made the promise. *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380  F.3d 849, 858 (5th Cir. 2004); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).

In federal court, fraud claims must also satisfy the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that fraud be pled with particularity, meaning that the plaintiff must plausibly plead facts establishing the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby. *IAS Servs. Grp., LLC v. Jim Buckley & Assocs., Inc.*, 900 F.3d 640, 647 (5th Cir. 2018). However, the ultimate meaning is context-specific. *Id.* Rule 9(b) does not supplant Rule 8's notice pleading standard, and only supplements Rule 8(a) in order to provide defendants with fair notice of the plaintiff's claims, protect defendants from harm to their reputation and good will, reduce the number of strike suits, and prevent plaintiffs from filing baseless claims and then attempting to discover unknown wrongs. *Id.* In the fraud context, the requirement of pleading the timing and content of the alleged misrepresentation is tied to the requirement that the plaintiff plausibly establish that he specifically relied on the alleged misrepresentation to his detriment. *Id.* at 648.

Plaintiff's Amended Complaint sufficiently pleads a fraudulent inducement claim. However, there is no basis for a separate fraud claim as Plaintiff alleges only that Kemin made misrepresentations to induce him to enter the contract based on false promises of future performance, and Plaintiff relied by entering into the contract, which are the allegations in support of the fraudulent inducement claim. The fraud count (Count Two) is dismissed.

-13-

C. Breach of Contract

JKF alleges that Kemin breached the lease agreements dated October 16, 2017 and May 18, 2018 without valid excuse, causing JKF damages. Kemin moves to dismiss this claim on the basis that the liquidated damages provision is unenforceable.

Liquidated damages provisions "determin[e] in advance the measure of damages if a party breaches the agreement." *Curtis v. Cerner Corp.*, 621 B.R. 141, 187 (S.D. Tex. 2020). Where liquidated damages provisions go beyond just compensation for the loss or damage actually sustained, they may be unenforceable penalties. To determine whether a liquidated-damages provision constitutes an unenforceable penalty, courts must consider two factors: (1) whether "the harm caused by the breach is incapable or difficult of estimation," and (2) whether "the amount of liquidated damages called for is a reasonable forecast of just compensation." *Hanover Ins. Co. v. Binnacle Dev., LLC*, 493 F. Supp. 3d 585, 591 (S.D. Tex. 2020). And even when liquidated-damages provisions are "properly designed" under those two criteria, they are still unenforceable when "the actual damages incurred were much less than the liquidated damages imposed, measured at the time of the breach." *Id.* For liquidated damages to be "reasonable forecasts," Texas courts require at least some thought in their making. *Id.* (citing *Garden Ridge, L.P. v. Advance Int'l., Inc*., 403 S.W.3d 432, 442 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (noting that the party attempting to enforce the liquidated-damages clause "did not perform any actual studies on what costs it would incur due to vendor noncompliance" and "could not explain any specifics" as to how it came up with the figure).

Kemin contends that the liquidated damages provision is a penalty because JKF fails to allege that the amount of liquidated damages called for is a reasonable forecast of just compensation. Kemin argues that the lease's "one size fits all" liquidated damages provision is

unconnected to any reasonable forecast of just compensation, as it calls for the same penalty regardless of whether Plaintiff finds a substitute lessee within a week, month, or a year, and even if the early termination is based on Plaintiff's own uncured breach of the lease or the Plaintiff's own insolvency or bankruptcy, as for if the lease is terminated because Kemin no longer grows oregano.

Plaintiff responds that the liquidated damages were substantially less than the approximately $2,000,000 that would have been owed under the lease for the remaining years, had the contract been fulfilled, and is proportionate to the money JKF outlaid to convert Well Number 3 and add pivots as requested by Kemin.

Although the issue of whether a liquidated damages provision is enforceable or is an unenforceable penalty is a question of law, that determination is based on facts. The Court finds that JKF pleads a plausible claim that the liquidated damages provision is enforceable. JKF alleges that the market is subject to volatile conditions, that it could be hard to find a new tenant and that lease rates fluctuate. JKF also alleges that future damages could be hard to estimate due to the market fluctuations and difficulty finding a new tenant. The provision was allegedly designed to alleviate this uncertainty and to compensate for JKF's up-front expenditure of $190,000. The pleadings plausibly allege facts demonstrating that the harm caused by the breach is incapable or difficult of estimation, and the amount of liquidated damages called for is a reasonable forecast of just compensation. Further, there is nothing in the pleadings indicating that the actual damages incurred were much less than the liquidated damages imposed, measured at the time of the breach. Thus, dismissal at the 12(b)(6) stage is improper. Whether the provision, which Kemin itself drafted, is ultimately enforceable is more appropriately decided on summary judgment.

In addition, the motion to dismiss does not address Plaintiff's other alleged breaches of

contract, such as the failure to assist in finding a new lessee, the failure to return the premises with Well Number 3 in good working order, and improperly subletting a portion of the land. Thus, the motion to dismiss the breach of contract claim is denied.

### Conclusion

Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 8) is GRANTED IN PART and DENIED IN PART. Plaintiff's fraud claim (Count Two) and negligent misrepresentation claim (Count Four) are DISMISSED. Plaintiff's fraud in the inducement (Count Three) and breach of contract (Count One) claims remain pending.

Defendant shall have until August 31, 2021 to answer or otherwise respond to the remaining claims in Third Amended Complaint.

It is so ORDERED.

SIGNED this 17th of August, 2021,

Xavier Rodriguez
United States District Judge